# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHELLE N. PORTER, as the Personal Representative of the Estate of Robert B. Porter, Deceased | )<br>)<br>)<br>) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-15-0390-HE |
| | ) | |
| THE BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY, STATE OF OKLAHOMA; and JACOB OWEN STREETER, DEPUTY OF OKLAHOMA COUNTY, in his individual and official capacities, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## **ORDER**

Plaintiff Michelle N. Porter, the personal representative of the estate of Robert B. Porter, deceased, filed this action against the Board of County Commissioners of Oklahoma County ("Board") and Jacob Owen Streeter, an Oklahoma County deputy sheriff, in both his individual and official capacities. She asserts a negligence claim against the Board under state law and a substantive due process claim against defendant Streeter under 42 U.S.C. §1983. Both claims arise out of a fatality accident that occurred on January 27, 2014, and involved vehicles driven by Streeter and the decedent. The Board and defendant Streeter in his official capacity filed a motion to dismiss and defendant Streeter filed a separate motion to dismiss plaintiff's claim asserted against him in his individual capacity.

Background

Plaintiff alleges in her complaint that Deputy Streeter, who was assigned to a drug

task force team with the Oklahoma County Sheriff's Department, had been working with the task force the evening of January 27, 2014. The team had just concluded an assignment near Waterloo Road and Interstate 35 north of Edmond, Oklahoma and Deputy Streeter had returned to his patrol vehicle and was on his way to meet team members at another location closer to Oklahoma City. Plaintiff alleges that Deputy Streeter was driving south at 70 mph on I-35 in the passing or fast lane of traffic, when a white Dodge Charger passed him in the right hand lane. She alleges that Deputy Streeter noticed that the Charger's headlights were not illuminated and that he decided to increase the speed of his patrol unit and parallel the movements of the Charger, without activating his emergency lights or sirens. She asserts that the deputy obtained a detailed description of the vehicle and even maneuvered his patrol unit into a position that allowed him to read its tag number.

Plaintiff alleges that Deputy Streeter then decided to alert the Charger's driver to the fact that he was traveling at night with his lights off by turning his own headlights off and on. She claims he was using the radio in his patrol unit at this time to communicate with other members of the task force team and asked if the other law enforcement agency the task force had been working with was using a white Dodge Charger. Deputy Streeter's radio transmissions confirm, plaintiff alleges, "that he was not confronted with an emergency but instead believed the White Dodge Charger was simply an unmarked patrol unit from another law enforcement agency." Doc. #1, p. 7, ¶35.

Plaintiff alleges that Deputy Streeter's patrol unit was equipped with a video camera which shows that, after the deputy had turned his headlights off and on, the operator of the

2

Dodge Charger turned on its headlights, then activated its left turn signal and moved in front of Deputy Streeter into the passing lane of south bound I-35. She asserts that the video footage next shows both the Charger and the deputy's patrol unit passing two vehicles in the right lane, followed by the driver of the Charger activating his right turn signal and changing back into the right lane. Plaintiff alleges that the video footage then ends.

Plaintiff alleges that the decedent, Mr. Porter, was driving home from work the evening of January 27, 2014, and was heading south on I-35 in his truck in the vicinity of Deputy Streeter's patrol car and the Charger. He apparently had changed lanes to pass the same two vehicles ahead of the Charger, but had not moved back into the slow lane of traffic. Plaintiff asserts that, after the Dodge Charger moved into the right lane, Deputy Streeter continued to travel in the passing lane and "slammed his patrol unit into the back of Robert Porter's pickup." *Id.* at p. 10, ¶53. The impact, plaintiff asserts, caused Mr. Porter's vehicle to leave the interstate in a broad slide before it began to roll. Plaintiff alleges that Mr. Porter sustained serious injuries as a result of the collision, which eventually caused his death on February 19, 2014. She alleges that, "[b]efore the video footage is lost . . . a set of brake lights matching the size and description of Robert Porter's brake lights is clearly visible to Deputy Streeter traveling in the same lane as Deputy Streeter." *Id.* at p. 10, ¶52.

Plaintiff alleges that Deputy Street's emergency lights and siren were never activated and that the Oklahoma County Sheriff's Department made no efforts on the evening of January 27, 2014, to locate the Dodge Charger. She also alleges that seconds before the impact Deputy Streeter's vehicle was driving at speeds in excess of 100 mph and that

immediately before the collision he was manually typing in the Charger's tag number on his laptop computer to gather registration and other information about the Charger.

Plaintiff alleges that the State of Oklahoma charged Deputy Streeter with one count of negligent homicide on January 13, 2015. Defendant Streeter pleaded nolo contendere to the charge on July 2, 2015, and received a deferred sentence. *See* Doc. #24-1.[1]

In her first cause of action, plaintiff asserts a substantive due process claim against Deputy Streeter under to 42 U.S.C. § 1983. In her second cause of action, plaintiff asserts a wrongful death claim against the Board of County Commissioners of Oklahoma County based on the alleged reckless and negligent conduct of Deputy Streeter.

## Analysis

Deputy Streeter has moved to dismiss plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6). When considering whether a plaintiff's claim should be dismissed under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving party. S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint must, though, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570,

---

[1] The court has taken judicial notice of the public records of the District Court of Oklahoma County. *See Okla. State Courts Network,* State of Okla. v. Streeter, Jacob Owen, *Case No. CM–2015–183, District Court in and for Oklahoma County, Oklahoma, http://www.oscn.net/applications/oscn/start.asp?viewType=DOCKETS (as accessed Nov.30, 2015).*

4

555 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Shields, 744 F.3d at 640 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). As explained by the Tenth Circuit, the Twombly/Iqbal pleading standard "is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." Id. at 640-41 (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir.2012)).

The Board challenges plaintiff's second cause of action under both Rule 12(b)(6) and Rule 12(b)(1). It claims plaintiff has failed to state a claim upon which relief may be granted and also asserts that, because it is entitled to sovereign immunity, the court lacks subject matter jurisdiction. "Motions to dismiss for lack of subject matter jurisdiction 'generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based.'" City of Albuquerque v. United States Dep't of Interior, 379 F.3d 901, 906 (10th Cir. 2004) (quoting Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir.2002)). As the Board's motion is a facial attack on plaintiff's assertion of subject matter jurisdiction in the complaint, the court presumes plaintiff's allegations are true. Id.

First Cause of Action

In the first cause of action, asserted against Deputy Streeter in both his official and individual capacities under § 1983, plaintiff alleges a violation of the decedent's substantive

due process rights. A suit against a county official in his official capacity is in effect a suit against the county itself. *See* Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). A local governmental entity, such as a municipality or county, cannot be held liable for the unconstitutional acts of its employees under a theory of respondeat superior. *See* Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 767 (10th Cir. 2013). For a county to be held liable, the "plaintiff must identify 'a government's policy or custom' that caused the injury." *Id.* This, Deputy Streeter argues, plaintiff has failed to do, so her claim against him in his official capacity fails. Plaintiff did not respond to this argument. She admitted in a footnote that she "did not intend to, and does not assert, that County violated 42 U.S.C. §1983." Doc. #14, p. 6 n.1. Plaintiff's substantive due process claim asserted against Deputy Streeter in his official capacity will therefore be dismissed.

Insofar as plaintiff has alleged a claim against Deputy Streeter in his individual capacity, the deputy asserts he is entitled to qualified immunity. That "defense shields government officials performing discretionary functions from liability if their conduct does not violate clearly established rights of which a reasonable government official would have known." Green v. Post, 574 F.3d 1294, 1299 (10th Cir. 2009) (internal quotation marks omitted). Deputy Streeter asserts plaintiff has not alleged a plausible substantive due process violation. Even if she had, the deputy contends "the law was far from clearly established at the time of this incident." Doc. #26, p. 4.

Courts previously "applied a two-step process to determine whether a defendant is entitled to qualified immunity," Green, 574 F.3d at 1299 (internal quotation marks omitted),

6

determining first whether the plaintiff asserted a violation of a constitutional right and then whether the right was clearly established. "The Supreme Court has now altered that analysis," noting that "'there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all.'" *Id.* (quoting <u>Pearson v. Callahan</u>, ___ U.S. ___, 129 S.Ct. 808, 812 (2009)). The plaintiff has "'the burden of showing both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation.'" *Id.* at 1300 (quoting <u>Williams v. Berney</u>, 519 F.3d 1216, 1220 (10th Cir.2008)). For a right to be clearly established, ordinarily "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (internal quotation marks omitted). It is not enough for the plaintiff to "identify in the abstract a clearly established right and allege that the defendant has violated it. A plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Id.* (quoting <u>Tonkovich v. Kansas Bd. of Regents</u>, 159 F.3d 504, 517 (10th Cir.1998)). "'Although Plaintiff does not need to find a case with an identical factual situation, [s]he still must show legal authority which makes it "apparent" that "in the light of pre-existing law" a reasonable official ... would have known that [the conduct in question violated substantive due process.]'" *Id.* (quoting <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1042 (10th Cir.2006)).

      In <u>Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998) the Supreme Court recognized a

substantive due process claim could exist where there is a "cognizable level of executive abuse of power . . . which shocks the conscience." The standard for deciding whether an abuse of power shocks the conscience depends on whether "unforeseen circumstances demand an officer's instant judgment" or whether "actual deliberation is practical." Green, 574 F.3d at 1301 (internal quotation marks omitted); Burgin v. Leach, 529 Fed. Appx. 882, 884 (10th Cir. 2013), *cert. denied,* 134 S.Ct. 932 (2014).[2]  "'[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to'" amount to conscience-shocking behavior. Green, 574 F.3d at 1301 (quoting Lewis, 523 U.S. at 853). In that situation, a plaintiff must show an intent to harm. Lewis, 523 U.S. at 853-54. However, when an officer has time to deliberate, the challenged conduct is considered under a deliberate indifference standard. *Id*.

Plaintiff claims it is clear under Green that Deputy Streeter's alleged conduct is governed by the lesser deliberate indifference standard and that she has stated a claim for conscience-shocking behavior because the deputy, in a non-emergency situation, was traveling at high speeds without his lights or sirens activated and with his eyes off the road. She argues that the deliberate indifference standard applies because the deputy's actions took place in a situation that allowed for unhurried judgment and in which the officer had the luxury of time and made conscious and deliberate decisions. While the deputy has attempted

---

[2]*Burgin is an unpublished decision. The court recognizes that unpublished decisions may not be considered in determining whether the law is clearly established. Green, 574 F.3d at 1305 n.10.*

8

to recharacterize her complaint by referring to the situation as a pursuit or a high speed police chase, plaintiff asserts that what she pleaded were facts showing that he was not responding to an emergency call or chasing a fleeing felon.

Deputy Streeter agrees that deliberate indifference is the relevant standard.[3] He claims, though, that the standard was not "defined with the degree of specificity necessary to provide any meaningful guidance to law enforcement officers who encounter a vehicle which is being driven in a dangerous manner." Doc. #34, p. 9.

In Green a sheriff's deputy, Jonathon Post, was attempting to catch up to a vehicle suspected of driving away from a gas station without paying for about $30.00 worth of gas when his vehicle hit Willis Green's car. The deputy was driving through the intersection without his siren or lights on at a high rate of speed. The stoplight turned from green to yellow as Post entered the intersection and his vehicle hit Green's car as Green was attempting to turn left in front of him. Green was ejected and died from his injuries. The officer testified that he was neither responding to an emergency situation nor in pursuit of the suspect's vehicle. The Tenth Circuit concluded that the officer's act of speeding through a yellow light in response to an official, non-emergency call, while negligent, did not "'demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" Green, 574 F.3d at 1304 (quoting Graves v. Thomas, 450 F.3d 1215,1221 (10th Cir.2006)). The court then made the alternative determination that,

---

[3]Defendant Streeter states in his reply brief: "Both parties agree the relevant legal standard is the deliberate indifference standard recognized in Green." Doc. #34, p. 9.

even if it concluded that the deputy had violated Green's substantive due process rights under the middle-level, deliberate indifference standard, he would be entitled to qualified immunity because "it was not clearly established what specific standard applied to the particular facts of this case-i.e., where the officer was engaged in a high-speed non-emergency response to a call to locate and arrest a suspected gas thief." Id. at 1304.

The court disagrees that it is evident from Green that deliberate indifference is the appropriate standard to apply to the conduct alleged in the complaint. Although she was careful not to use the word "pursuit," plaintiff has essentially pleaded facts demonstrating that Deputy Streeter was engaged in a high speed pursuit of the Dodge Charger. She alleged in the complaint that the deputy, while driving 70 mph on an interstate highway, was passed by a vehicle (Charger) that was speeding at night in the right hand lane of traffic without headlights. The deputy did not stop the vehicle, but flashed his lights to signal to the other driver to turn his lights on and radioed to see if the Charger was being used in the task force operation. Once he learned it was not, the deputy began to type the Charger's license tag number into his laptop computer while he continued to follow it. After being alerted to his lack of lights by the deputy, the Charger's driver apparently either accelerated or continued at an excessively high rate of speed, as plaintiff alleges Deputy Streeter was driving in excess of 100 miles per hour immediately before he hit Mr. Porter's pickup. Doc. #1, ¶78.

The Tenth Circuit recognized in Green that a question existed "of what constitutes a 'chase' or a 'pursuit' and, particularly, a 'high-speed' chase or pursuit." Green, 574 F.3d at 1301 n.7. It explained that Lewis, "where the police officer embarked on a virtually

10

instantaneous high-speed (at speeds up to 100 mph) 'chase' or 'pursuit' of a motorcycle which was directly in front of the officer and was attempting to evade arrest," *id.,* and a 'response' to a non-emergency call to assist in an investigation or disturbance some distance away," were at opposite ends of the spectrum. *Id.* The situation in <u>Green</u>, the court concluded, lay somewhere in the "vast middle ground." *Id.* The Tenth Circuit recognized that, while Officer Post was "responding to a call to 'pursue' a suspected gas thief," his car "may or may not have been in the officer's view." *Id.* Although "[t]here was undoubtedly some urgency [in <u>Green</u>]," the court stated that "it was not like the 'chase' or 'pursuit' which occurred in <u>Lewis</u> and cases similar to <u>Lewis</u>." *Id.*

In <u>Ellis ex rel. Estate of Ellis v. Ogden City</u>, 589 F.3d 1099 (10th Cir.2009), decided shortly after <u>Green</u>, the Tenth Circuit again applied the intent to injure standard to a high speed chase which resulted in the death of a bystander. Officers, who had been conducting a stakeout in a known gang member area, allegedly began to follow and then chase an individual through a town in Utah, at speeds that sometimes reached 80 miles per hour. The officers allegedly could have waited to arrest the individual at his residence for any crimes he might have committed. They continued to chase him even though they supposedly were ordered by dispatch to stop the pursuit. Following <u>Lewis,</u> because there was "no dispute about the alleged underlying police activity resulting in Mr. Ellis's death being a high-speed pursuit," *id.* at 1102, the Tenth Circuit stated it was "satisfied that [the] complaint alleged facts showing there was not time to deliberate." *Id*. It noted that, while the Supreme Court "did not explicitly define what constitutes a high-speed pursuit" in <u>Lewis</u>, it did state that the

11

"'[deliberate indifference] standard is sensibly employed only when actual deliberation is practical.'" *Id.* (quoting Lewis, 523 U.S. at 851.

The Tenth Circuit has applied the deliberate indifferent standard in two other recent cases, Burgin, 529 Fed.Appx. at 882, and Browder v. City of Albuquerque, 787 F.3d 1076 (10th Cir. 2015). Although both involved officers driving at high speeds, neither was a chase or pursuit situation. In Burgin, an officer was responding to a non-emergency domestic incident approximately forty-five minutes to an hour <u>after</u> it had been reported by dispatch. And in Browder, the officer was off duty. "After finishing his shift at the Albuquerque police department and on no one's business but his own, [Browder] got into his police cruiser, flipped on the emergency lights, and drove off at an average of about 66 miles an hour on city surface streets through ten different intersections over a stretch of 8.8 miles." *Id.* at 1077. He ran a red light and crashed into a vehicle killing one person and seriously injuring another.[4]

As noted previously, in her complaint plaintiff avoided using terms such as chase, pursuit or even follow. She did not provide any information regarding the distance covered by the patrol car and the Charger or the time lapse between the time when Deputy Streeter first saw the Charger and when his vehicle struck Mr. Porter's pickup. Instead, she asserts

---

[4]*For purposes of determining whether it was clearly established which standard applied to the particular facts of this case, neither Burgin or Browder can be considered. Burgin is not a published decision and Browder was decided after the collision.*

12

that Deputy Streeter, as evidenced by his ability to radio his task force members,[5] signal to the driver of the Charger that his lights were not on and type the tag number into his computer, was not "being forced to make split second decisions, Doc. #1, ¶34, but had the "luxury of time to think and deliberate." Doc. #31, p. 14. The court is not bound, though, by plaintiff's characterization of the facts or her pleading of phrases pulled from the cases in an attempt to frame the sequence of events that took place on the evening of January 27 as a slowly unfolding situation allowing time for actual deliberation.

Plaintiff is correct that Deputy Streeter was not responding to an emergency call. However, he was, under the facts alleged, pursuing a vehicle that was being driven dangerously and whose driver had violated multiple state traffic laws. The car was speeding without lights down the highway, eventually at a rate of over 100 mph. Neither Lewis nor Ellis involved an "emergency." What they did involve were high speed law enforcement chases. In both cases the courts concluded that the appropriate standard was intent to harm because "unforeseen circumstances demand an officer's instant judgment." Lewis, 523 U.S. at 853. However, the court recognizes there are distinctions between the facts that plaintiff has alleged and Lewis, Ellis and other more typical high speed police chases. Deputy Streeter did not activate his siren or his overhead lights as he was pursuing the Charger and had not made any attempt to stop the vehicle. He also was allegedly typing on his laptop

---

[5]*There allegedly was radio contact in Ellis between the officers and police dispatch, but no discussion that it demonstrated that the officers had time to deliberate about their actions and should therefore be subjected to a lower standard of fault.*

computer at the time of the collision. And, although it can be inferred, there is no allegation that the driver of the Charger knew he was being pursued or followed.

It appears Deputy Streeter "face[d] a situation 'calling for fast action,'" Perez v. Unified Gov't of Wyandotte County/Kansas City, Kan., 432 F.3d 1163, 1166 (10th Cir.2005) (quoting Lewis, 523 U.S. at 853), so that plaintiff's substantive due process claim fails for lack of any allegation of intent to harm. However, at this stage of the case the facts must be construed in plaintiff's favor and plaintiff has arguably pleaded facts demonstrating that the deputy had sufficient time to respond so that "actual deliberation [was] practical.'" Green, 574 F.3d at 1303 (quoting Graves, 450 F.3d at 1221). That brings into play the lesser deliberate indifference standard. Plaintiff has not, though, shown that in January 2014 "it was . . . clearly established what specific standard applied to the particular facts of this case," *id.* at 1304, where the officer was engaged in a high-speed pursuit of a car that was speeding, passing in the slow lane of traffic and being driven at night on an interstate without lights. The alleged facts fall somewhere on the continuum between the situation in Lewis and that in Green. The court cannot say that the law was clearly established at the time of the collision such that a reasonable officer in Deputy Streeter's position would have known that his conduct was a violation of Mr. Porter's constitutional rights. Deputy Streeter's alleged use of his laptop computer while driving, especially at such a high rate of speed, makes the case, which resulted in a tragic accident, troubling and no doubt supports the inference of negligence that was the basis for Deputy Streeter's criminal conviction. It does not, though, support an inference that defendant's conduct violated a clearly established right. The court

14

therefore concludes defendant Streeter is entitled to qualified immunity with respect to plaintiff's § 1983 substantive due process claim.[6] Plaintiff's § 1983 claim asserted against Deputy Streeter in his individual capacity will be dismissed.

Second Cause of Action

In the second cause of action, plaintiff has asserted a negligence claim against the Board pursuant to the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 Okla. Stat. §§ 151-200. Plaintiff alleges that the Board is responsible for Deputy Streeter's negligent actions, which were within the "course and scope of his employment with the Oklahoma County Sheriff Department." Doc. #1, p. 21, ¶115.

In the GTCA Oklahoma formally adopted the doctrine of sovereign immunity. However, the Act also includes a limited waiver of sovereign immunity, providing that a political subdivision, such as a county, "shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment . . . ." *Id.* § 153(A).[7] The employee of a political subdivision who acts within the scope of his employment is immune from tort liability under the GTCA, while the responsibility for any loss incurred as a result of that employee's torts shifts to the political subdivision. The GTCA defines "scope of employment" as the employee's good faith performance of his or her duties. 51 Okla. Stat. § 152(12).

---

[6]*Having decided that the law was not clearly established as to which standard governed Deputy Streeter's conduct, it is unnecessary to resolve definitively the issue of whether the deputy violated Mr. Porter's substantive due process rights.*

[7]*There are limitations and exceptions specified in the act.*

The Board asserts that not only has plaintiff failed to allege facts demonstrating that Deputy Streeter was acting within the scope of his employment at the time of the high-speed pursuit and eventual accident that caused Mr. Porter's death, "the Complaint compels the conclusion that Defendant Streeter was acting outside the scope of his employment." Doc. #11, p. 10. Therefore, the Board argues, it retains its sovereign immunity and plaintiff's state tort claim must be dismissed for lack of subject matter jurisdiction.

The Board recognizes that Oklahoma law authorizes officers to disregard certain rules of the road when responding to an emergency call or when pursuing an actual or suspected violator of the law. *See* 47 Okla. Stat. § 11-106(A). An officer is permitted to "[e]xceed the maximum speed limits so long as speeding does not endanger life or property," and so long as the officer has engaged his siren and/or flashing lights. *Id.* at § 11-106(B)(3), (C).[8] However, the Board contends, plaintiff has not alleged that Deputy Streeter was responding to any emergency call. What she has alleged, it asserts, is that the deputy was driving on an interstate highway in a non-emergency situation at speeds in excess of 100 mph without activating either his sirens or his flashing lights and, at the time of the collision, he allegedly was entering data into his laptop computer. The Board claims that, as demonstrated by Burgin v. Leach, 320 P.3d 33 (Okla.Civ.App. 2014), only one reasonable conclusion can be drawn from the pleaded facts, Deputy Streeter was acting outside the scope of his

---

[8]*The statute authorizes an officer to speed or disregard regulations governing turning in specified directions without engaging his sirens and/or flashing lights in certain circumstances that, based on the allegations in the complaint, are not applicable here. See 47 Okla. Stat. § 11-106(D).*

16

employment.

Plaintiff responds that she has pleaded facts demonstrating that Deputy Streeter was acting within the scope of his employment at the time of accident and that her substantive due process claim against Deputy Streeter and her negligence claim against the Board are not inconsistent. If they are, she asserts she is authorized by Fed.R.Civ.P. 8(d) to plead inconsistent or alternative claims.

Plaintiff has pleaded sufficient facts which, accepted as true, state a claim against the Board under the GTCA based on the negligent conduct of Deputy Streeter. She has alleged that, while on his way to meet other task force members, the deputy was confronted with a driver who was operating a vehicle at night without lights, was speeding and passing in the right traffic lane. As he thought the vehicle's driver might be another law enforcement officer, the deputy was trying to obtain information about the vehicle and its driver presumably before he made a traffic stop, which was within his job duties. While doing so, he took steps to keep the suspect vehicle in sight, so that a stop might be initiated if appropriate. Such actions are arguably within the scope of his employment.

It is unnecessary to decide at this time whether plaintiff's claims against Deputy Streeter and the Board are mutually exclusive because Fed.R.Civ.P. 8(d)(3) allows inconsistent claims. *See* Campbell v. Barnett, 351 F.2d 342, 344 (10th Cir.1965) ("F.R.Civ.P., permits a plaintiff to plead alternate, hypothetical and inconsistent claims").[9]

---

[9]*The current provision is Fed.R.Civ.P. 8(d)(3).*

Burgin, cited by the Board, similarly allowed the plaintiffs to proceed against both the deputy and the County. The court noted that the plaintiffs had alleged that the deputy was liable "for failing to exercise ordinary care and for reckless disregarding the rights of others" and that the Oklahoma Pleading Code permits a pleader to assert inconsistent facts or theories. Burgin, 320 P.3d at 38. The Board's motion will therefore be denied.

Accordingly, the motion to dismiss filed by the Board and defendant Streeter in his official capacity [Doc. #11] is **GRANTED in PART** and **DENIED in PART**. Plaintiff's negligence claim against the Board will not be dismissed. Her § 1983 substantive due process claim asserted against defendant Streeter in his official capacity will be dismissed. The motion to dismiss filed by defendant Streeter in his individual capacity [Doc. #26] is **GRANTED**. Plaintiff's § 1983 substantive due process claim asserted against defendant Streeter in his individual capacity will be **DISMISSED**.

**IT IS SO ORDERED**.

Dated this 30th day of December, 2015.

_/s/ Joe Heaton_
JOE HEATON
CHIEF U.S. DISTRICT JUDGE