IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MICHELLE N. PORTER, as the )
Personal Representative of the Estate )
of Robert B. Porter, Deceased )
)
          Plaintiff, )
vs. )   NO. CIV-15-0390-HE
)
THE BOARD OF COUNTY )
COMMISSIONERS OF OKLAHOMA )
COUNTY, STATE OF OKLAHOMA; )
and JACOB OWEN STREETER, )
DEPUTY OF OKLAHOMA COUNTY, )
in his individual and official capacities, )
)
          Defendants. )

## ORDER

Plaintiff Michelle N. Porter, the personal representative of the estate of Robert B. Porter, deceased, filed this action against the Board of County Commissioners of Oklahoma County ("Board") and Jacob Owen Streeter, an Oklahoma County deputy sheriff, in both his individual and official capacities. She asserted a negligence claim against the Board under state law and a substantive due process claim against defendant Streeter under 42 U.S.C. §1983. The claims arose out of a fatality accident that occurred on January 27, 2014, and involved vehicles driven by Deputy Streeter and the decedent. Both defendants sought the dismissal of the claim asserted against them. Concluding defendant Streeter was entitled to qualified immunity, the court dismissed the substantive due process claim plaintiff had asserted against him and denied the Board's motion. Plaintiff then amended her complaint twice, again suing Deputy Streeter and the Board. Plaintiff reasserted her substantive due

process claim against defendant Streeter in his individual capacity. She asserted a negligence claim and a failure to train claim under §1983 against the Board. Both defendants filed motions to dismiss.[1] The court previously granted defendant Streeter's motion and now considers the Board's motion, which challenges only plaintiff's § 1983 failure to train claim.

Background

Plaintiff alleges in her complaint that Deputy Streeter, who was assigned to a drug task force team with the Oklahoma County Sheriff's Department, had been working with the task force the evening of January 27, 2014. The team had just concluded an assignment near Waterloo Road and Interstate 35 north of Edmond, Oklahoma and Deputy Streeter had returned to his patrol vehicle and was on his way to meet team members at another location closer to Oklahoma City. Plaintiff alleges that Deputy Streeter was driving south at 70 mph on I-35 in the passing or fast lane of traffic, when a white Dodge Charger passed him in the right hand lane. She alleges that Deputy Streeter noticed that the Charger's headlights were not illuminated and that he decided to increase the speed of his patrol unit and parallel the movements of the Charger, without activating his emergency lights or sirens. She asserts that the deputy obtained a detailed description of the vehicle and even maneuvered his patrol unit into a position that allowed him to read its tag number.

Plaintiff alleges that Deputy Streeter then decided to alert the Charger's driver to the

---

[1] *The Board's motion is only a partial motion to dismiss.*

2

fact that he was traveling at night with his lights off by turning his own headlights off and on. She asserts he was using the radio in his patrol unit at this time to communicate with other members of the task force team and asked if the other law enforcement agency the task force had been working with was using a white Dodge Charger. Deputy Streeter's radio transmissions confirm, plaintiff alleges, "that he was not confronted with an emergency but instead believed the White Dodge Charger was simply an unmarked patrol unit from another law enforcement agency." Doc. #55, p. 7, ¶35. Plaintiff alleges the deputy was advised that someone from the other agency was not driving the White Dodge Charger.

Plaintiff alleges that Deputy Streeter's patrol unit was equipped with a video camera which shows that, after the deputy turned his headlights off and on, the operator of the Dodge Charger turned on its headlights and then activated its left turn signal and moved in front of Deputy Streeter into the passing lane of south bound I-35. She asserts that the video footage next shows both the Charger and the deputy's patrol unit passing two vehicles in the right lane, followed by the driver of the Charger activating his right turn signal and changing back into the right lane. Plaintiff alleges that the video footage then ends.

Plaintiff alleges that the decedent, Mr. Porter, was driving home from work the evening of January 27, 2014, and was heading south on I-35 in his truck in the vicinity of Deputy Streeter's patrol car and the Charger. He allegedly had changed lanes to pass the same two vehicles ahead of the Charger, but had not moved back into the slow lane of traffic. Plaintiff asserts that, after the Dodge Charger moved into the right lane, Deputy Streeter

3

continued to travel in the passing lane and "slammed his patrol unit into the back of Robert Porter's pickup." *Id.* at p. 10, ¶53. The impact, plaintiff asserts, caused Mr. Porter's vehicle to leave the interstate in a broad slide before it began to roll. Plaintiff alleges that Mr. Porter sustained serious injuries as a result of the collision, which eventually caused his death on February 19, 2014. She alleges that, "[b]efore the video footage is lost . . . a set of brake lights matching the size and description of Robert Porter's brake lights is clearly visible to Deputy Streeter traveling in the same lane as Deputy Streeter." *Id.* at ¶52.

Plaintiff alleges that Deputy Street's emergency lights and siren were never activated and that the Oklahoma County Sheriff's Department made no further efforts on the evening of January 27, 2014, to locate the Dodge Charger. She alleges that, seconds before the impact, Deputy Streeter's vehicle was travelling at speeds in excess of 100 mph and that, immediately before the collision, his computer screen was open to the Mobile Cop Vehicle License Plate Search Screen and he was manually typing the Charger's tag number on his laptop computer.

The State of Oklahoma charged Deputy Streeter with one count of negligent homicide on January 13, 2015. Defendant Streeter pleaded nolo contendere to the charge on July 2, 2015, and received a deferred sentence. *See* Doc. #24-1.[2]

Plaintiff alleges that Deputy Streeter has been involved in two other car wrecks while

---

[2]*The court has taken judicial notice of the public records of the District Court of Oklahoma County. See* Okla. State Courts Network, State of Okla. v. Streeter, Jacob Owen, *Case No. CM–2015–183, District Court in and for Oklahoma County, Oklahoma, http://www.oscn.net/applications/oscn/start.asp?viewType=DOCKETS (as accessed May 13, 2016).*

employed by Oklahoma County. One of them, which took place in 2009, allegedly "resulted from Deputy Streeter's failure to devote his full attention to the road while traveling on Interstate 40, a similar scenario as to that which occurred here." Doc. #55, p. 25 at ¶ 126.

In her third claim, plaintiff alleges that Deputy Streeter violated Mr. Porter's substantive due process rights when he drove his patrol car at speeds exceeding 100 miles per hour, without activating its lights and siren, while simultaneously trying to read a license plate and type the license plate number into his on-board laptop computer. She contends the Board is accountable for the violation because, while the county trains its officers to use their discretion when operating their on-board laptop computers, it has not trained them that "it is inappropriate to read a license plate and attempt to type the information into an on-board laptop computer when traveling at highway rates of speed or above."[3] Doc. #55, p. 24 at ¶124. The County should, plaintiff alleges, "at the very least, flatly prohibit sheriff's deputies from typing into an on-board laptop computer when traveling at highway rates of speed or above." Id. Plaintiff alleges the County's training also is faulty because Oklahoma County deputies are unaware that, as a result of Green v. Post, 574 F.3d 1294 (10th Cir. 2009), intent to injure is no longer required for liability to be imposed under § 1983 for a substantive due process violation in certain situations, such as the one that allegedly occurred here.

---

[3]*Defendant incorrectly states that plaintiff's third claim is "simply a Supervisory Liability type claim." Doc. #57, p. 2. Plaintiff is seeking to impose liability on the County, not on one of Deputy Streeter's supervisors.*

5

Analysis

The Board has moved to dismiss plaintiff's § 1983 failure to train claim pursuant to Fed.R.Civ.P. 12(b)(6). When considering whether a plaintiff's claim should be dismissed under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving party. S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint must, though, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 555 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Shields, 744 F.3d at 640 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Considering the complaint under this standard, the court concludes the Board's motion should be granted.

While local governments may be held responsible under § 1983 for "their own illegal acts," to recover under the statute, a plaintiff must "prove that action pursuant to official municipal policy caused their injury." Connick v. Thompson, 563 U.S. 51, 60 (2011) (internal quotation marks omitted). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Id. at 61. The

Supreme Court has cautioned that "[a] municipality's culpability for a deprivation of rights is at its <u>most tenuous</u> where a claim turns on a failure to train." *Id.*(emphasis added).

For it to be the basis of a § 1983 claim, the lack of training must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 409 (1997)). A county may be deemed deliberately indifferent if its policymakers decide to retain a training program despite actual or constructive notice that a particular omission in it causes county employees to violate citizens' constitutional rights. *Id.* at 61. "'In a narrow range of circumstances . . . deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.'" Bryson v. City of Oklahoma City, 627 F.3d 784, 789 (10th Cir. 2010) (quoting Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998)).

The Board initially argues that plaintiff's failure to train claim fails because the court dismissed the underlying substantive due process claim against Deputy Streeter. Defendant misread the prior order. The court found it "unnecessary to resolve definitively the issue of

7

whether the deputy violated Mr. Porter's substantive due process rights." Doc. #35, p. 15 n.6. It based its decision on grounds of qualified immunity. *Id.* at pp. 14-15. For purposes of the Board's motion, the court will assume that Deputy Streeter did violate Mr. Porter's substantive due process rights. J.H. ex rel. J.P. v. Bernalillo Cty., 806 F.3d 1255, 1262 (10th Cir. 2015) ("[T]he county could incur liability for failure to train only if [the deputy] had committed a constitutional or statutory violation.").

The Board next asserts that because county deputies are certified and trained by the Council on Law Enforcement Education and Training ("CLEET"), it cannot be held accountable based on inadequate training. Defendant cites no authority to support that conclusion and the court knows of none. Compliance with CLEET certificate requirements and standards would no doubt be some evidence of the county's effort to meet its training obligations. However, the fact that the Board itself does not train county deputies or set training standards, does not immunize it from liability for constitutional violations committed by county employees.

In its remaining arguments, the Board fails to address the key question – whether plaintiff has pleaded sufficient facts "to show, as the law requires, that the need for more or different training [was] so obvious that a violation of [Mr. Porter's] constitutional right to [substantive due process] was likely to result from not providing it." Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 773-74 (10th Cir. 2013).

According to plaintiff, the County "trains its officers to use their discretion when

operating the on-board laptop computer." Doc. #56, p. 23 at ¶123. She asserts this is insufficient. Plaintiff argues it should have been obvious to the County that it needed to instruct its deputies not to type on their computers while they were driving at speeds exceeding 100 miles per hour. The County knew, she contends, that deputies had the recurrent need to use their on-board laptop computers and to travel at speeds exceeding the speed limit. Doc.#59, p. 3. It also was aware, she claims, of Deputy Streeter's "past inattention while driving." *Id.*

Plaintiff's allegations fall short of what is required to state a § 1983 claim against the Board/County for failure to train. Plaintiff has not alleged that the County had notice– actual or constructive – of a pattern of tortious conduct. *See* Bryson, 627 F.3d at 789 (quoting Barney, 143 F.3d at 1307 ("'In most instances, notice can be established by proving the existence of a pattern of tortious conduct.'")). She does not allege that Deputy Streeter's prior automobile accidents were caused because of his computer use,[4] or that other Oklahoma County deputies have been involved in vehicle accidents as a result of their being distracted by their on-board computers. *See* Connick, 563 U.S. at 62-63 (incidents similar to alleged constitutional violation required to put decisionmaker on notice "that specific training was necessary to avoid [the claimed] constitutional violation." ).

The alleged facts also do not fall within the narrow range of circumstances in which "the unconstitutional consequences of failing to train could be so patently obvious that a city

---

[4]*Plaintiff provides no specific information as to Deputy Streeter's other accidents.*

9

could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64. The Supreme Court in Canton "posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." Connick, 563 U.S. at 63. The Court stated that because "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," and "[t]he city has armed its officers with firearms, in part to allow them to accomplish this task, . . . the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." Canton, 489 U.S. at 390 n.10 (internal citation omitted).

The County did not provide its officers with vehicle computers so they could type in license plate numbers while they were driving down the highway at speeds in excess of 100 miles per hour. And plaintiff has not alleged that Deputy Streeter's alleged conduct on the evening of January 27, which resulted in the filing of negligent homicide charges, was a recurring situation. The facts pleaded do not state a claim under Canton's hypothesized single-incident theory of liability. *See* Canton, 489 U.S. at 390 & n.10.

Olsen v. Layton Hills Mall, 312 F.3d 1304 (10th Cir. 2002), the principal case relied on by plaintiff, is distinguishable. The issue in Olsen was whether a county manifested deliberate indifference by failing to train its jail's prebooking officers to recognize obsessive-compulsive disorder ("OCD") and handle those who suffered from the condition

appropriately. Because OCD was relatively common and the county had procedures in place for dealing with inmates with psychiatric disorders, the Tenth Circuit concluded a fact question existed as to whether the county had constructive notice of the illness' prevalence and consequences. As has been discussed, plaintiff has not alleged that what occurred here – a deputy typing on his laptop computer while operating his patrol unit at speeds in excess of 100 miles per hour – was a relatively common occurrence. More on point is <u>Bryson</u>.

The plaintiff in <u>Bryson</u> sued the City of Oklahoma City and a forensic chemist employed by the Oklahoma City Police Department, Joyce Gilchrist, under § 1983, based on his conviction for crimes he did not commit. Ms. Gilchrist had falsified test results, concealed exculpatory evidence and testified falsely at Mr. Bryson's trial. The City, sued for failing to train Ms. Gilchrist properly at the beginning of her career and then further train or supervise her, had moved for summary judgment.[5] The Tenth Circuit concluded the plaintiff had not presented sufficient evidence to support a finding of deliberate indifference. It noted that the City "had not yet received any complaints or criticisms of any of its forensic chemists' work at the time Ms. Gilchrist concealed exculpatory evidence and falsified her test reports in 1983." <u>Bryson</u>, 627 F.3d at 789. The court also was "not persuaded . . . that it was highly predictable or plainly obvious that a forensic chemist would decide to falsify test reports and conceal evidence if she received only nine months of on-the-job training and was

---

[5]*In <u>Olsen</u> and <u>Bryson</u>, the Tenth Circuit was considering motions for summary judgment, rather than a motion to dismiss. The court recognizes the distinction between the standards applicable to Rule 12(b)(6) and Rule 56 motions.*

not supervised by an individual with a background in forensic science." *Id.*

Plaintiff has failed to allege facts demonstrating that the County, by allowing its deputies to exercise their discretion in determining when to use their on-board computers, has acted with deliberate indifference. She has not alleged facts demonstrating that the County "had been put on notice of [a risk of harm] either by a past pattern of wrongful acts or by the high predictability that wrongful acts would occur." *Id.* at 790. As the Tenth Circuit noted in Schneider, "[s]pecific or extensive training hardly seems necessary" for an officer to know that certain behavior is inappropriate. Schneider, 717 F.3d at 774 (internal quotation marks omitted).[6]

Accordingly, the Board's motion to dismiss [Doc. #57] is granted and plaintiff's §1983 failure to train claim is dismissed for failure to state a claim.

**IT IS SO ORDERED**.

Dated this 19th day of August, 2016.

JOE HEATON
CHIEF U. S. DISTRICT JUDGE

---

[6]*The court also is not persuaded that the Tenth Circuit's decision in Green, 574 F.3d at 1294 triggered a duty to train, as argued by plaintiff.*